# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| R.J., a minor child, by next friends | § | |
| RON J. and CINDY J. | § | |
| | § | |
| V. | § | CASE NO. 4:05CV257 |
| | § | (Judge Schneider/Judge Bush) |
| MCKINNEY INDEPENDENT SCHOOL | § | |
| DISTRICT, ET AL. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendants Joe Miniscalo and Cindy Miegel's Motion to Dismiss (Docket #8) and Defendants McKinney Independent School District, Joe Miniscalo and Cindy Miegel's Motion to Limit the Scope of Trial (Docket #10).   Having considered the motions, responses, replies, and sur-replies, the Court finds as follows.

### Facts

Plaintiff, R.J., was a sixth grader at Faubion Middle School in the McKinney Independent School District ("MISD"). According to his parents' Complaint, R.J. had  disciplinary problems and was frequently picked on by other children.  His  parents alerted school officials that R.J. was being bullied, but they allege no affirmative action was taken. He also had academic difficulties, as his receptive and expressive language abilities were at a third grade level.  His reading ability had likewise shown little improvement since third grade.  R.J.'s  parents attribute many of his difficulties to Attention Deficit Hyperactivity Disorder ("ADHD"), Dyslexia, Central Auditory Processing Disorder ("CAPD"), and oral and written expressive language disorder.

On November 30, 2004, R.J.'s  mother wrote a letter to Defendant Cindy Miegel, Faubion's Assistant Principal, requesting that R.J. be evaluated to receive services under the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* Ms. Robin Phillips, the sixth grade counselor, acknowledged the request and stated it would be considered on December 9, 2004 by the school's "SST" Committee.[1]

On December 3, 2004, R.J. attempted to set fire to a piece of toilet paper in the boys' bathroom. A partially burned piece of notebook paper also was found on the bathroom floor next to the unburned toilet paper. R.J. admitted to attempting to light the toilet paper, but denied lighting the notebook paper. R.J. was questioned by school authorities later in the morning and was required to write a confession. He was thereafter allowed to return to class.

Later that morning, R.J. was arrested at the middle school and taken to the Collin County Juvenile Detention Facility. For the first time that day, R.J.'s parents were contacted. R.J. was released from the detention facility later that afternoon and, according to his parents, showed signs of emotional distress. R.J.'s parents withdrew him from MISD on December 6, 2004.

R.J.'s parents received a letter on December 13, 2004 notifying them that a recommendation to expel R.J. from MISD was being made pending the outcome of the "504 Committee's" determination of whether R.J.'s behavior was a manifestation of his disability. A manifestation hearing pursuant to § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a, was set to take place on December 16, 2004.[2] The expulsion hearing was scheduled for the following day.

---

[1]According to the Complaint, R.J. was receiving services under an Accommodation Plan pursuant to § 504 of the Rehabilitation Act, but had not been evaluated under the IDEA. The statutes provide for similar relief, but the IDEA contains a more comprehensive regime for provision of educational services. As one example, the IDEA contemplates strong parental input. *Schoenbach v. District of Columbia,* 309 F. F. Supp. 2d 71 (D.D.C. 2004).

[2] See generally 34 C.F.R. §§ 104.35, 104.36. A § 504 hearing may be satisfied by incorporating IDEA safeguards.

Due to scheduling conflicts, the expulsion hearing was rescheduled for January 13, 2005, with the § 504 hearing to take place at an undetermined time thereafter.  R.J.'s counsel objected to holding the expulsion hearing prior to the manifestation hearing.  Furthermore, R.J.'s attorney claimed that the manifestation hearing should be conducted pursuant to the IDEA under 34 C.F.R. § 300.527 rather than under § 504, as R.J.'s mother had requested that he be tested for special education prior to the December 3, 2004 incident.[3]  According to Plaintiffs, there are distinct differences in the statutes which could materially influence the outcome.

On January 19, 2005, Defendant Joe Miniscalo notified R.J.'s parents that he found that R.J. had committed arson and that he should be expelled to the Collin County Juvenile Justice Alternative Education program for a term not to exceed 180 days.  The notice further stated that R.J.'s parents were to contact the District's Special Education Director by January 26, 2005 to schedule a manifestation hearing pursuant to the IDEA.

R.J.'s counsel notified the district that he intended to appeal the expulsion and requested that the appeal not be scheduled until after the manifestation hearing determination had been made. The manifestation hearing was thereafter scheduled for February 11, 2005.  However, the notice scheduling the meeting stated the determination was contingent upon R.J.'s parents consenting to a "Full Individual Evaluation" to determine R.J.'s eligibility for special education.   At the meeting, R.J.'s parents declined to consent to the evaluation and no manifestation hearing

---

[3] 34 C.F.R. § 300.527 creates a presumptive  knowledge of  disability where the parent has notified the school of a concern and requested an evaluation. However, the regulation only provides that the child may assert any of the protections provided for in the regulations. Both § 504 and the IDEA provide for due process safeguards.  Since MISD was proceeding under § 504, the Court assumes that the school was incorporating the safeguards of 34 C.F.R. 300.527 in trying to have a hearing to determine whether R.J.'s behavior was related to his alleged disability.  In any event, after the Hearing Officer's decision, any hearing would have to have been conducted under the IDEA, which was the precise relief R.J.'s parents had requested.

occurred.

On February 9, 2005, R.J.'s parents filed a request for a Special Education Due Process Hearing with the Texas Education Agency.  On February 18, 2005, counsel for the parties and the Special Education Hearing Officer, Mr. Larry Craddock, participated in a prehearing teleconference.  Counsel agreed that a fact hearing was not necessary and that the disagreements between the parties involved only legal issues.

R.J.'s counsel submitted a Motion for Summary Judgment to the hearing officer on March 9, 2005.  MISD had previously filed a Motion to Dismiss and did not move for summary judgment.  The hearing officer issued his decision on March 25, 2005, in which he held that: (1) R.J. was entitled to an IDEA manifestation hearing under 34 C.F.R. § 300.527; (2) upon returning R.J. to Faubion Middle School, R.J.'s parents were ordered to immediately make him available for a Full Individual Evaluation; and (3) the district could not expel R.J. for any misconduct that was a manifestation of his disabilities or arose out of his disabilities.

R.J.'s parents claim they never had any intention of returning R.J. to the Faubion Middle School.  Therefore, they never consented to the evaluation as directed.  On April 18, 2005, Defendant Miniscalo sent a letter to the Collin County Juvenile Court stating the R.J.'s parents had not complied with the provisions of the hearing officer's decision and that the district had no choice but to move forward with expulsion.

Plaintiffs filed this cause of action on June 29, 2005.  Count One is essentially an appeal of the Special Education Hearing Officer's decision pursuant to 20 U.S.C. 1415(i)(2).  Count Two charges MISD and Joe Miniscalo with violating § 504 of the Rehabilitation Act, and Count Three charges Joe Miniscalo and Cindy Miegel with violating 42 U.S.C. § 1983.  Defendants Miniscalo

and Miegel have moved to dismiss the claims against them, and all Defendants have moved to limit the scope of trial.  The Court will first consider the motion to dismiss.

## Standard

Prior decisions of both the United States Supreme Court and the Fifth Circuit Court of Appeals have made it clear that motions to dismiss for failure to state a claim upon which relief can be granted should not be granted lightly.  For a complaint to be dismissed for failure to state a claim, it must appear "beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [the]m to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Reeves v. City of Jackson, Mississippi*, 532 F.2d 491 (5th Cir. 1976).

Absent a claim which is obviously insufficient, a court should not grant a Rule 12(b)(6) motion to dismiss, thereby denying the plaintiffs an opportunity to develop facts to support their complaint.  Moreover, sufficient procedures are available to defendants to seek summary disposition of a lawsuit after the plaintiffs have been afforded some opportunity to develop facts to support their complaint.  *Reeves*, 532 F.2d at 494.

## Analysis

Defendants Miniscalo and Miegel first move for dismissal because they claim they are not proper parties to the suit, as they were not parties to the Special Education Hearing from which Count One is the appeal.  However, Plaintiffs have not asserted any IDEA claims against Defendants Miniscalo and Miegel.  Rather, Plaintiffs sue said Defendants under § 504 and § 1983.  In *Angela L. v. Pasadena Indep. School Dist.*, 918 F.2d 1188, 1193 n.3 (5th Cir. 1990) the Fifth Circuit acknowledged that plaintiffs could, and often did, bring claims under the Handicapped Children's Protection Act of 1986 (precursor to the IDEA), § 504, and § 1983.  Defendants have cited no

authority supporting their contention that they cannot be sued in separate counts of an action raising an IDEA appeal.  Dismissal on this  ground  is improper.

Defendants Miniscalo and Miegel next argue that dismissal of the claims against them in their official capacities is appropriate because such claims are redundant of the claims against MISD. The Supreme Court has stated that "Official capacity suits...generally represent only another way of pleading an action against an entity of which the officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  Defendants further cite *Doe v. Rains Indep. Sch. Dist.*, 865 F. Supp. 375, 378 (E.D. Tex. 1994) for the proposition that claims against individual defendants in their official capacities are redundant and should be dismissed when such claims are also brought against the school district. However,  Plaintiffs do not name MISD in their § 1983 claim.  Any redundancy as to that claim is therefore impossible.  Plaintiffs have named MISD and Defendant Miniscalo in their § 504 claim, but Defendants have cited no authority suggesting dismissal of § 504 claims is appropriate on redundancy grounds.  The Court therefore declines to grant  Defendants Miniscalo and Miegel's motion to dismiss on redundancy grounds.  However, to the extent Plaintiffs are attempting to use § 1983 as a vehicle to enforce their § 504 claims against Defendant Miniscalo, the Court finds that § 1983 cannot be so used.  *See Lollar v. Baker*, 196 F.3d 603, 609-10 (5th Cir. 1999) (finding that § 1983 may not be used as an enforcement mechanism for § 504 claims as § 504 contains its own internal comprehensive enforcement mechanism).  Plaintiffs may not maintain a § 1983 action *in lieu of or in addition to a* Rehabilitation Act or ADA cause of action if the only alleged deprivation is one of rights created by the aforementioned Acts.  *Id*.

According to the Complaint, Plaintiffs have sued Minisalco under § 504 for holding the

expulsion hearing without the  benefit of a manifestation hearing.  The plaintiffs claim that a determination should have been made even in absence of parental consent.  This position puts the defendants in a "Catch 22" position.  The plaintiffs claim that R.J. is entitled to protection since a request for evaluation was made and this request is presumptive knowledge by MISD triggering certain procedural safeguards. 20 U.S.C. § 1415(8)(B).  The agency is charged with obtaining parental consent to conduct the initial evaluation. 20 U.S.C. § 1414(c).  Here, the parents have refused to submit R.J. to evaluation, the very relief they first sought.  If the parents refuse the evaluation, the agency *may* continue the evaluation process. 20 U.S.C. § 1414(c)(ii).  The process contemplates some testing or evaluation, a process completely frustrated by the parents' refusal to have R.J. evaluated.  *See generally* 20 U.S.C. § 1414(2).  Under the Rehabilitation Act, testing is also contemplated before a change in placement. 34 C.F.R. § 104.35.

It appears that the parents' position is that a manifestation hearing should have been scheduled and held without any objective testing.  The district's position is that evaluation is necessary before a hearing can take place.  The Court also notes that, according to the parents, R.J. is no longer in attendance at the school.  What the parents wish to obtain at this point under their IDEA claim is not clear since R.J. has been withdrawn and the parents have refused to have him evaluated.[4]

In the reply, for the first time, Defendant Miniscalo argues that he is not a proper party to the § 504 claim.  Although untimely , the Court will consider the argument since Plaintiffs addressed

---

[4]Under the IDEA, parents who unilaterally decide to place their child in a private school, without the consent of local school officials, "do so at their own risk." *Florence County Sch. Dist. Four v. Carfter*, 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed. 2d 284 (1993) (quoting *Sch. Comm. Of Burlington* v. *Dep't Educ. of Mass.*, 471 U.S. 359, 369, 105 S.Ct. 1996 (1985)).  In fact, the IDEA contemplates that the child's status will not change until after a hearing. 20 U.S.C. § 1415(7).

the issue in their sur-reply and no purpose would be served in prolonging the inevitable result.

Section 504 provides:

> (a) Promulgation of rules and regulations
>
> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
> (b) "Program or activity" defined
>
> For the purposes of this section, the term "program or activity" means all of the operations of--
> (1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
>
> (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;
>
> (2)(A) a college, university, or other postsecondary institution, or a public system of higher education; or
>
> (B) a local educational agency (as defined in section 7801 of Title 20), system of vocational education, or other school system;

29 U.S.C. 794(a) & (b).  Plaintiffs have failed to plead that Defendant Miniscalo is subject to suit under § 504 because Plaintiffs have failed to show that Defendant Miniscalo has received federal financial assistance.  *See Lightbourn v. County of El Paso*, 118 F.3d 421, 427 (5th Cir. 1997) (finding plaintiffs failed to state § 504 claim against the Secretary of the State of Texas when they failed to argue or present evidence that secretary received federal financial assistance; evidence that state received financial assistance was not sufficient to establish jurisdiction over secretary).  Section 504 provides for suit against programs and activities receiving federal financial assistance, but not against individuals.  *See Lollar*, 196 F.3d at 609 (plaintiff could not sue director of state agency individually

under § 504 and could not bring § 504 claims under § 1983); *see also Pritchard v. S. Co. Servs.* 102 F.3d 1118, 1119 (11th Cir. 1996) (liability under Rehabilitation Act lies against employer, not individual officers of employer); *Gary v. Georgia Dept. of Human Res.*, 323 F. Supp. 2d 1368, 1373 (N.D. Ga. 2004) ("the Rehabilitation Act does not provide for relief against individual Defendants"); *Huck v. MEGA Nursing Servs. Inc.* 989 F. Supp. 1462, 1464 (S.D. Fla 1997)(allegation that nursing home received federal funds was insufficient to create Rehabilitation Act claim against individual managers).

Plaintiffs cite three cases in support of their contention that "there is a long history of common-law cases in which suit has been brought against individual defendants pursuant to § 504." Of the cases cited by Plaintiffs, two involve requests for injunctive relief rather than damages, and none specifically address whether individuals can be sued under § 504. The mere fact that some individual parties in the past have failed to move for dismissal when faced with § 504 claims does not mean, in light of other precedent, that § 504 creates a cause of action against individual defendants. Plaintiffs' § 504 cause of action against Defendant Miniscalo should therefore be dismissed since it only applies to those entities receiving financial aid. 34 C.F.R. § 104.31. The due process requirements of § 504 may be satisfied by following the procedural due process requirements of the IDEA. 34 C.F.R. § 104.36. Plaintiffs' allegations as to Minisalco under § 1983 are based solely on alleged procedural violations of § 504. For the reasons previously stated, Plaintiffs' complaint against Minisalco fails to state a clam for relief under § 1983 as well.

Defendants Miniscalo and Miegel also claim that they are entitled to qualified immunity in their individual capacities. Since Miniscalco has been dismissed, the Court will only consider Miegel's argument. Qualified immunity shields state officials from personal suits arising out of

actions taken in their official capacities as long as their conduct did not violate clearly established constitutional or statutory rights of which a reasonable person would have known .  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Stidham v. Tex. Com'n on Private Sec.*, 418 F.3d 486 (5ᵗʰ Cir. 2005).  A right is clearly established if the contours of the right were so clearly defined when the official acted that a reasonable person in the official's position would have understood that his actions were violating that right.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  The official action itself need not have been previously held unlawful, but the action's unlawfulness must be plainly apparent in light of preexisting law.  *Id.* at 640; *Brawner v. City of Richardson*, 855 F.2d 187, 192 (5ᵗʰ Cir. 1988).  In other words, officials must observe "general, well-developed legal principles."  *Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443 at 455 (5ᵗʰ Cir. 1994).  In order to overcome qualified immunity, the burden is on the plaintiffs to plead facts which would overcome the defendants' immunity.  *Whatley v. Philo*, 817 F.2d 19, 20-21 (5ᵗʰ Cir. 1987).

Plaintiffs allege that Defendant Miegel violated R.J.'s rights under the Due Process Clause of the 14ᵗʰ Amendment by questioning him, detaining him, dictating a written confession to him and forcing him to sign it, and having him arrested, all without notifying his parents.  Plaintiffs further claim that Defendant Miegel's actions violated clearly established school policy of which a reasonable assistant principal should have been aware.  As to Miniscalco, Plaintiffs claim that their due process rights were also violated when Miniscalco notified the Collin County Juvenile authorities of the expulsion prior to a hearing.[5]  Defendants contend that R.J., who had withdrawn

---

[5]Count Two as to Miniscalco alleges that under the color of law he violated R.J.'s rights by proceeding with expulsion before a manifestation hearing and proceeding with expulsion even though R.J. was no longer a student. No complaint is made concerning his contact with authorities. However, the IDEA provides for such contact and Plaintiffs have made no showing that such contact violated any clearly established right. 20 U.S.C. § 1415(9).

10

from the district prior to being expelled, was never actually expelled.  Furthermore,  Miegel cites

authority justifying the actions taken by her as a school official.  However, this is not a fact intensive

inquiry, but one which must focus upon the facts as stated in Plaintiffs' Complaint, which must be

taken as true.  The Court finds that Plaintiffs have plead sufficient facts to survive 12(b)(6) dismissal

on qualified immunity grounds.  R.J.  has alleged that Miegel violated his constitutional and statutory

rights, and has stated specific facts in support of such allegations.  *See Wilkerson v. Stalder*, 329 F.3d

431 (5th Cir. 2003) (affirming district court's denial of motion to dismiss on qualified immunity

grounds when complaint failed to state sufficient facts to support immunity defense).  The Court

therefore denies Defendant  Miegel's motion to dismiss on qualified immunity grounds.[6]

### Motion to Limit Scope of Trial

The  Court  must  next  consider  all  Defendants'  Motion  to  Limit  the  Scope  of  Trial.

Defendants first argue that the scope of trial should be limited because Plaintiffs have failed to

exhaust administrative remedies with respect to their § 504 and § 1983 claims.  All parties seem to

agree, and the Court finds, that Plaintiffs exhausted administrative remedies with respect to their

IDEA claim.[7]  Essentially, Defendants argue that, since Plaintiffs are bringing an IDEA appeal, they

were required to exhaust administrative remedies with respect to the § 504 and § 1983 claims.

20 U.S.C. § 1415(i)(2)(A) provides:

Any party aggrieved by the findings and decision made under subsection (f) or (k) of

---

[6] Defendant argues that her  immunity is essentially lost if the case is required to go to trial or even proceed through discovery. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  However, when a plaintiff's complaint states a claim of violation of clearly established law, as the Court finds to be the case, Defendant may  raise qualified immunity at the summary judgment stage if discovery reveals facts indicating that Defendant was, in fact, entitled to qualified immunity. *Id*.

[7] However, Plaintiffs' unilateral action in withdrawing R.J. and refusing to submit him to evaluation may have other consequences not addressed herein.

this section who does not have the right to an appeal under subsection (g) of this section, and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

The parties agree that § 1415(i)(2)(A) applies to Plaintiffs' situation.  Pursuant to § 1415(i)(2)(A), a party may only appeal a hearing officer's decision after a hearing has been held and a decision has been issued.  *See Smith v. Robinson*, 468 U.S. 992, 1012-13 (1984); *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 130 n.10 (5th Cir. 1993).  All parties agree that an IDEA hearing was held and that the hearing officer issued a decision.  No party contends that Plaintiffs' § 504 or § 1983 claims were addressed at the hearing, but Defendants claim that Plaintiffs were required to exhaust administrative remedies as to those claims before bringing them in district court.

Section 1415 goes on to state that:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 *et seq.*], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 *et seq.*], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).  However, where exhaustion of administrative remedies would be futile or inadequate to protect the plaintiffs' rights, it is not required.  *Honig v. Doe*, 484 U.S. 305, 326-27 (1988).  What remains of Plaintiffs' complaint seeks money damages against Defendant Miegel for violating R.J.'s constitutional due process rights.  Money damages are for non-educational injuries and are not available under the IDEA.  *See Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1275

(9th Cir. 1999); *Charlie F. v. Bd. of Educ of Skokie Sch. Dist.*, 98 F.3d 989, 991 (7th Cir. 1996); *Hall v. Knott County Bd. of Educ.*, 941 F.2d 402, 407 (6th Cir. 1991).  The special education hearing officer had no authority to grant monetary relief, and the Court finds that for Plaintiffs to have pursued their § 1983 claims against Defendant Miegel at the special education hearing would have been futile.  Furthermore, the Court notes that administrative remedies only need to be exhausted when a plaintiff is seeking "relief that is also available under [§ 1415]."  20 U.S.C. § 1415; *see also W.B. Matula*, 67 F.3d 484, 496 (3d Cir. 1995).  As monetary relief is not available under the IDEA, and as Plaintiffs have exhausted their administrative remedies with respect to their IDEA claim, the Court finds that Defendants' motion to dismiss for failure to exhaust administrative remedies should be denied.

At the IDEA administrative hearing, all parties agreed that there was no factual dispute and that a decision could be made based upon the legal issues.  Defendants contend, and Plaintiffs acknowledge, that no additional evidence is necessary on the IDEA issue.  Therefore the Court will consider no evidence outside of the administrative record with regard to the IDEA appeal.  However, the scope of trial shall not be limited with respect to all remaining claims that were not presented at the administrative hearing.

## **RECOMMENDATION**

Based upon the foregoing, the Court recommends that Defendant Miniscalo's Motion to Dismiss be GRANTED and that all claims against Defendant Miniscalo be DISMISSED WITH PREJUDICE.  The Court further recommends that Defendant Miegel's Motion to Dismiss, as well as all Defendants' request for dismissal for failure to exhaust administrative remedies, be DENIED.  The Court finally recommends that Defendants' Motion to Limit the Scope of Trial

be GRANTED only with respect to the IDEA appeal and that the scope of trial should not be limited with regard to Plaintiffs' remaining  claims.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 29th day of December, 2005.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE