IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| RON J, *as next friend of R.J.,* § <br> *a minor child* § <br> § <br> v. § <br> § <br> MCKINNEY INDEPENDENT SCHOOL § <br> DISTRICT, ET AL § | Case No. 4:05cv257 <br> (Judge Schneider/Judge Bush) |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court are the parties' Motions for Summary Judgement. Defendant Cindy Miegel ("Ms. Miegel") has filed a Motion for Summary Judgment in an action filed by R.J., a minor child ("R.J."), by next friends Ron J. and Cindy J. (Docket No. 59). Defendant, McKinney Independent School District (the "District"), has also filed a Motion for Summary Judgement on Plaintiffs' remaining Section 504 claim and the IDEA appeal. (Docket No. 58). Finally, Plaintiffs have also filed a Motion for Summary Judgment on the remaining claims. (Docket No. 57).

**STANDARD**

A party is entitled to summary judgment on all or any part of a claim "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party must show initially that there is no genuine issue of any material fact. *Id.* at 256. The movant may meet this burden by pointing out the absence of evidence supporting any essential element of the non-moving party's claim. *Celotex Corp. V. Catrett*, 477 U.S. 317

(1986).

In deciding whether to grant a motion for summary judgment, the Court "review[s] the evidence and inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991) (*citing Duvall v. The Ritz Carlton Hotel Co.*, 946 F.2d 418, 420 (5th Cir. 1991), *and quoting* Fed. R. Civ. P. 56(c)). An issue is "genuine" only if the evidence could lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) (*citing Anderson*, 477 U.S. at 255).

The opposing party may not rest on the mere allegations or denials of artful pleading, but must set forth affirmative facts that show a genuine issue for trial. *Anderson*, 477 U.S. at 256. This requires that the non-moving party make a showing sufficient to establish the existence of any element essential to that party's case, and on which that party will bear the burden at trial. *Nowlin v. R.T.C.*, 33 F.3d 498, 501 (5th Cir. 1994) (*citing Celotex*, 477 U.S. at 322-23).

## History

The Court has previously set forth the facts of the case in its prior Report and Recommendation. (Docket No. 28). In summary, on December 3, 2004, Ms. Miegel was an assistant principal at Faubion Middle School in McKinney, Texas. According to her affidavit, she was informed by a student that R.J. had attempted to set a fire in the school's bathroom. She says she questioned R.J. about the incident and he admitted to starting the fire. She says that she asked him to write and sign the confession. According to the affidavit of Ms. Miegel and the deposition of R.J., Ms. Miegel had him write down what happened. She did not threaten him or coerce him. There is simply no evidence that she did anything improper in "questioning " R.J..

Plaintiffs' complaints against Ms. Miegel fall into three categories. First, she was aware that

R.J. was being bullied but was not proactive enough. She failed to take steps to protect him. Second, despite knowledge that R.J. had disabilities with respect to oral and written communications, Ms. Miegel detained him and extracted a confession. Third, she allowed him to be taken into custody of the police without attempting to notify his parents. R.J. claims this violates school policy. Ms. Miegel claims she did not summon officers and did not cause him to be arrested.

### Bullying

Plaintiffs claim that RJ was bullied at school. The record indicates an October 29, 2004 email from R.J.'s mother to Ms. Miegel about an incident with three boys. Ms. Miegel's response is immediate and hardly could be classified as non-responsive. Ms. Miegel expressly stated that the three students would be counseled immediately. In fact, R.J.'s mother did not want the issue addressed in a manner to exacerbate the situation. The only other email to Ms. Miegel refers to some conduct with two other students. The Court finds that Ms. Miegel did not turn a "deaf ear" to R.J.'s mother's plight. In fact, R.J.'s mother compliments Ms. Miegel in her second email concerning Ms. Miegel's care and concern for her son. In the end analysis, to sustain an action under 42 U.S.C. Section 1983, the parents must point to more than actions of Ms. Miegel. The parents must identify a policymaker, with final policymaking authority, and a policy that is the moving force behind the alleged constitutional violation. *Rivera v. Houston Indep. Sch. Dist.*, 349 F. 3d 244 (5th Cir. 2003).

### The "Confession"

As to the "questioning," the Court notes that school policy allows questioning under the facts as presented here. As the Fifth Circuit has held, "it is not at all clear that they (students) have some privacy right not to be summoned to and detained in a school official's office for questioning on matters of school discipline." *Milligan v. City of Slidell,* 226 F.3d 652, 655 (5th Cir. 2000). R.J.

admitted to his part in starting the fire. Ms. Miegel merely asked him to write what he had already admitted to doing. R.J. provides no evidence that he was told to write or confess to something he did not do. Plaintiffs argue that he was told to write something after he first signed his statement. The first part of his statement indicates that he threw a match on "sum [sic] toilet paper." Later on, he states that he found "sum [sic] paper on the floor so I put that down and threw the match down but it went out so I left." Whether or not Ms. Miegel "suggested" that he write an account of the second incident is of little consequence in what occurred. Arson is Arson, no matter whether a match is thrown on a piece of toilet paper or on a paper towel. Plaintiffs have demonstrated no constitutional violation. The school district has a right to confront R.J. with the allegations against him and to offer him an opportunity to provide his own version of the events without the necessity of first contacting his parents. *See Goss v. Lopez,* 419 U.S. 565, 581-82 (1975).

### Police Arrest

Plaintiffs next argue that Ms. Miegel had R.J. arrested by the police and failed to contact his parents. There is simply no credible evidence of the District's or Ms. Miegel's participation in the arrest. In any event, the general policies of the school indicate that a student may be questioned and that the principal will ordinarily attempt to contact the parents on a student's arrest. There is a statement that ordinarily this notification will come after an arrest. Ms. Miegel had probable cause that R.J. committed a crime. To argue that the police had no right to come and arrest R.J. is simply baseless.

Even if Plaintiffs could invent some constitutional violation, Plaintiffs must show that the child's constitutional rights were violated through the execution of an official policy or custom of the District. *See Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir. 1995).

It is not enough for Plaintiffs to merely identify conduct properly attributable to Defendant Miegel; Plaintiffs must also demonstrate that, through her deliberate conduct, Ms. Miegel was the "moving force" behind the injuries alleged. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997). Further, only the actions of District officials with final policymaking authority can subject Ms. Miegel in her official capacity, and thus, the District, to such liability. *Eugene*, 65 F.3d at 1304, (*citing St. Louis v. Praprotnick*, 485 U.S. 112, 128 (1988)). Under Texas law, the final policy making authority in an independent school district rests with the district's board of trustees. *Id., Jett* v. *Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); Tex. Educ. Code Ann. § 11.151 (Vernon 1996). Therefore, Defendant Miegel in her official capacity can be liable only if Plaintiffs can prove that the "execution of the [District's] policy or custom...inflicts injury" about which the Plaintiffs complain. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989), *quoting Springfield v. Kibbe*, 480 U.S. 257, 267 (1987). This Plaintiffs cannot do.

The Fifth Circuit has defined "official policy" as follows:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the district...or by an official to whom the district has delegated policy-making authority; or

2. A persistent, widespread practice of district officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a claim that fairly represents district policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the district or to whom that body has delegated policy making authority.

*Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995).

Plaintiffs, however, have not even pled facts that allege that Ms. Miegel, acting pursuant to an official policy or custom of the District, caused R.J.'s constitutional rights to be deprived. Further, in order for liability to attach, Miegel must have fault for some act or omission, not merely

5

responsibility for the act. *See Gonzalez v. Yselta Indep. Sch. Dist.*, 996 F.2d 745, 747 (5th Cir. 1993). To show fault, "plaintiffs must offer evidence of not simply a decision but a decision by [Ms. Miegel in her official capacity] to violate the Constitution." *Id.* at 759, *quoting Canton*, 489 U.S. at 494-96. Ms. Miegel, in her official capacity, can make a decision to violate the Constitution only if she acts pursuant to an official policy or custom of the District and the policymakers acted with deliberate indifference to a citizen's constitutional rights in promulgating that official policy or custom of the District. *See Gonzales*, 996 F.2d at 757-59. As the Supreme Court states, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Bd. of County Comm'rs of Bryan County*, 520 U.S. at 411. Deliberate indifference exists when a plaintiff can allege "facts clearly evincing wanton actions on the part of the defendants." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

In this case, Plaintiffs have failed to plead any act by a policymaker taken with deliberate indifference to R.J.'s constitutional Fourteenth Amendment rights. Additionally, Plaintiffs fail to plead that Ms. Miegel acted pursuant to any District policy or custom in violation of R.J.'s constitutional rights. Accordingly, Ms. Miegel, in her official capacity, is entitled to Summary Judgment on Plaintiffs' constitutional claims against her.

The Court finds that in any event, Miegel is entitled to qualified immunity on Plaintiffs' claims for violation of due process. Much of the general discussion was contained in the Court's prior Report and Recommendation. (Docket No. 28). Qualified immunity shields state officials from personal suits arising out of actions taken in their official capacities as long as their conduct did not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Stidham v. Tex. Com'n on*

*Private Sec.*, 418 F.3d 486 (5th Cir. 2005). A right is clearly established if the contours of the right were so clearly defined when the official acted that a reasonable person in the official's position would have understood that his actions were violating that right. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The official action itself need not have been previously held unlawful, but the action's unlawfulness must be plainly apparent in light of preexisting law. *Id*. at 640; *Brawner v. City of Richardson*, 855 F.2d 187, 192 (5th Cir. 1988). In other words, officials must observe "general, well-developed legal principles." *Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443, 455 (5th Cir. 1994). The Court finds that under the evidence presented, Ms. Miegel's actions were entirely appropriate.

### Plaintiffs' Claim Under Section 504

Section 504 of the Rehabilitation Act of 1973 (the "Act") prohibits recipients of federal financial assistance from discriminating on the basis of disability. The Rehabilitation Act of 1973 § 504, 29 U.S.C. §794 (2002). Under Section 504, a school district is charged with providing "free appropriate public education" to handicapped students within its jurisdiction. Free Appropriate Public Education , 34 C.F.R. § 104.33 (2006). In order to sustain a claim under Section 504, a plaintiff must prove that "(1) he is an individual with a disability under the Act; (2) he is otherwise qualified for benefits sought; (3) he was discriminated against solely by reason of his disability; and (4) the program or activity in question receives federal funding." *Chandler v. City of Dallas*, 2 F.3d 1385,1389-90 (5th Cir. 1993). The gravamen of Plaintiffs' complaint is that the district expelled R.J. without a Section 504 hearing. Early on, the District scheduled a 504 hearing but rescheduled at the request of Plaintiffs' counsel. Thereafter, Plaintiffs obtained new counsel who insisted that R.J. was entitled to a manifestation hearing under IDEA. There is no proof that R.J. was discriminated

against because of his disability. The failure of the district to conduct a 504 hearing lies in no fault of the district but rather of the parents or their counsel. By insisting on an IDEA hearing the parents waived any right to a 504 hearing although for all purposes, there is little difference in what would have been presented. In any event, Plaintiffs have failed to provide any evidence that the District violated Section 794.

The Act provides that "[n]o otherwise qualified individual with a disability ...shall, solely by reason of her or his disability, be excluded from the participation in...any program or activity receiving Federal financial assistance..." 29 U.S.C. § 794. The Act defines "disability" as a physical or mental impairment which either creates "a substantial impediment to employment" or "substantially limits one or more major life activities." 29 U.S.C. § 705 (9). To bring an action under the Act against a school for failing to provide adequate services to a child with a learning disability, a plaintiff must allege "something more than a mere failure to provide the 'free appropriate education' " required by the IDEA. *Monaham v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982). The plaintiff must allege that the school acted with "bad faith or gross misjudgment" in order to state a valid claim for discrimination under the Rehabilitation Act. *Id*. at 1171. *See also Colin K. by John K v. Schmidt*, 715 F.2d 1, 10 (1st Cir. 1983) (finding that plaintiffs could not bring Rehabilitation Act discrimination claim where they did not allege that the defendants "have any particular animus towards learning disabled children"). Plaintiffs have not put forth a genuine issue of fact to warrant an issue for factual determination. *See generally*, *S.W. Holbrook Public Schs.*, 221 F.S.2d 222 (D. Mass. 2002).

**Plaintiff's IDEA Appeal**

The parents insisted on a hearing without having R.J. tested even though the Hearing Officer directed that a hearing be held after R.J. was tested. The district had a right to have R.J. evaluated with or without parental consent. *See Shelby S ex. Rel. Kathleen T. v. Conroe Indep. Sch. Dist.*, 454 F.3d 450 (5th Cir. 2006). It was the parents' choice to either accept the benefits of special education under IDEA or decline to have RJ tested for evaluation. The parents actions in declining to have R.J. evaluated signified their intent not to pursue a program for R.J. in the McKinney Independent School District. The parents cannot be compelled to have their child tested nor can the District be compelled to provide services to a child whose parents refuse to have him evaluated. Having conducted an independent review of the record and in light of Fifth Circuit precedent, the Court finds that the Hearing Officer's decision was correct. Any "procedural blunder'" by the District was either harmless or invited by the parents' or counsel's conduct. *See Farrin v. Maine Sch. Admin. Dist. No. 59*, 165 F. Supp. 2d 37 (D. Me. 2001).

Although a district's failure to adhere to the IDEA's procedural requirements may be "adequate grounds by themselves" for holding the district liable, *Jackson v. Franklin County Sch. Bd.*, 806 F.2d 623, 629 (5th Cir. 1986), "procedural errors in and of themselves do not automatically constitute a denial of FAPE." *Matthew M. ex rel. William M. v. William Penn. Sch. Dist.*, 2002 WL 1286910 (E.D. Pa. 2002). Rather, only those "procedural inadequacies that result in the loss of educational opportunity or seriously infringe the parents' opportunity to participate in the IEP formulation process warrant relief." *Id.* (*citing, W.G. v. Bd. of Trs. Of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir. 1992)). The burden of establishing such harm rests on the plaintiff. *C.M. v. Bd. of Educ. of Union County Reg'l High Sch.*, 128 Fed. App'x 876 (3rd Cir.

2005).

The Court finds that in any event, the parents' voluntary withdrawal of RJ from school prior to any hearing or scheduled hearing operates as a waiver of their rights to proceed under IDEA or Section 794 for the relief which they seek. The Court is satisfied that the parents position in this matter amounts to nothing more than a hyper technical attempt to "bully" the District into compliance with an unreasonable interpretation of the Act whose underlying purpose is for the protection of the student, something that appears lost in the constrained version advocated by the Plaintiffs.

## **RECOMMENDATION**

Based upon the foregoing, it is the Court's recommendation that the Plaintiffs' Motion for Summary Judgment be DENIED and the Defendants' Motion for Summary Judgment be GRANTED.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 11th day of October, 2006.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE